IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-CV-318-MR-WCM

| | |
|---|---|
| JOHNNIE R. SIMMONS, JR., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> WALMART, INC. ) <br> ) <br> Defendant. ) <br> ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the court on "Defendant's Motions to Dismiss" (the "Motion," Doc. 24), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.  Background

A. Relevant Procedural History

On October 25, 2021, Plaintiff Johnnie R. Simmons, Jr. ("Plaintiff"), proceeding *pro se*, filed his original Complaint in this matter against Doug McMillion, Walmart, Inc., and Walmart Store No. 1034. Doc. 1. Therein, Plaintiff alleged that on November 23, 2018, "Nicholas Marlow a Shelby Police Officer" assaulted and wrongfully detained Plaintiff for suspected shoplifting at a Walmart store in Shelby, North Carolina. See Doc. 1 at 7-9.

Also on October 25, 2021, Plaintiff filed a motion to proceed *in forma pauperis*. Doc. 2.

1

That request was granted on November 16, 2021, and Plaintiff was instructed to prepare summonses for defendants and to submit them to the Clerk for delivery to the United States Marshals Service for service. Doc. 6. Plaintiff was advised that notwithstanding service of process by the United States Marshals Service, Plaintiff remained responsible for making sure that service was effected properly pursuant to the Rules of Civil Procedure. Id. Summonses were issued electronically the same day. Doc. 8.

On January 12, 2022, attorney Latrisha Chantel Cherry-Lassiter appeared on behalf of Plaintiff. Doc. 13.[1]

On January 13, 2022, the defendants filed a Motion to Dismiss. Doc. 14.

On January 27, 2022, Plaintiff filed an Amended Complaint naming Walmart, Inc. ("Defendant") as the sole defendant. Doc. 20.

On January 31, 2022, the then-pending Motion to Dismiss was denied as moot. Doc. 21.

On February 10, 2022, Defendant filed the instant Motion to Dismiss with a supporting memorandum. Docs. 24 & 25. Plaintiff has responded and Defendant has replied. Docs. 28 & 29.

### B. Plaintiff's Allegations

The Amended Complaint alleges as follows:

---

[1] Plaintiff is also now represented by Harry M. Daniels, who was admitted *pro hac vice* in this action on February 3, 2022. Doc. 23.

On November 23, 2018, Plaintiff, "a middle age black man," was in the Walmart store located at 705 East Dixon Blvd. in Shelby, North Carolina to conduct a Western Union transaction at the front of the store. Doc. 20 at ¶ 10. When he had completed the transaction, he "stopped to gather and organize his personal items" at which point he was "approached by Officer Marlow (hereinafter 'Marlow') who was working as security, an agent/employee at Defendant Walmart 1034." Id. at ¶ 11.

Plaintiff alleges that although he did not cause a disturbance, disrupt the store, or interfere with other customers, Marlow grabbed Plaintiff's arms and began to place him in handcuffs. In the process, he physically slammed Plaintiff into metal shopping carts and onto the concrete floor, "restricting his ability to move and placing him under arrest," while other customers entered and exited the store. After Plaintiff was handcuffed, Marlow lifted Plaintiff off the concrete floor, and escorted him through the store to the Loss Prevention Office, even though Plaintiff informed Marlow that he did not possess any property belonging to Defendant. Id. at ¶¶ 12–17.

In the Loss Prevention Office, Marlow searched Plaintiff's luggage but did not find any of Defendant's property. Marlow finally removed the handcuffs and released Plaintiff. Subsequently, "another agent of Walmart" told Plaintiff to not "show his face again at the store." Id. at ¶ 18

Plaintiff alleges suffering a chest contusion, neck injuries, back injuries, and permanent injury to his right knee because of the encounter, and contends that he sustained other emotional and economic damages. Id. at ¶ 20.

Plaintiff's Amended Complaint includes the following claims for relief: assault and battery, false imprisonment/false arrest, a claim for violation of 42 U.S.C. § 1981, a claim for violation of 42 U.S.C. § 1982, defamation *per se*, and intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages.

## II. Legal Standards

### A. Failure to State a Claim

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see

Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### B. Insufficient Process and Insufficient Service of Process

"A motion under Rule 12(b)(4) challenges the sufficiency of process, while a motion under Rule 12(b)(5) challenges the sufficiency of service of process." Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *2 (E.D.N.C. Mar. 30, 2016) (citing Fed. R. Civ. P. 12(b)(4), (b)(5)). Put differently, "a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery." Wright v. Tyson Foods, Inc., No. 5:18-cv-27-D, 2018 WL 3232776, at *1 (E.D.N.C. June 30, 2018) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004)).

It is the plaintiff's burden to demonstrate that service has been effected properly. McDaniel v. Greyhound Lines, Inc., No. 3:08-cv-130-FDW, 2008 WL

2704774, at *4 (W.D.N.C. July 7, 2008) (quoting Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003)).

"Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998) (citing Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984)).

### III. Discussion

#### A. Failure to State a Claim

##### 1. Agency

Defendant contends that all of Plaintiff's claims should be dismissed because Plaintiff has failed to adequately allege agency between Marlow and Defendant. Specifically, Defendant argues that "Plaintiff does not allege that the Defendant maintained any control over Officer Marlow or his actions" and, consequently, that "no conduct on the part of Officer Marlow or any other officers should be attributed" to Defendant. Doc. 25 at 3.

In response, Plaintiff maintains that he has clearly alleged that Marlow was "acting within the scope of his employment as an employee and agent" of Defendant on the day in question. Doc. 28 at 3.

"In North Carolina, in order to have an agency relationship, an agent must be (1) under the authority of the principal to act on their behalf, and (2) under the control of the principal." Powers v. One Technologies, LLC, 3:21-cv-

6

00089-FDW-DCK, 2021 WL 3519282, at *3 (W.D.N.C. Aug. 10, 2021) (citing State v. Weaver, 359 N.C. 246, 258 (2005)). "[L]iability of a principal for the torts of his agent arises in three situations: '(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed *within the scope of his employment and in furtherance of the principal's business*; or (3) when the agent's act is ratified by the principal.'" Lee v. United States, 171 F.Supp.2d 566, 574 (M.D.N.C. 2001) (emphasis added in Lee) (citing Hogan v. Forsyth Country Club, 79 N.C.App. 483, 491 (1986)).

"'When ... the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another it is the fact that he was about his master's business which imposes liability [on the employer].'" Lee, 171 F.Supp.2d at 574 (quoting Clemmons v. Life Ins. Co. of Georgia, 274 N.C. 416, 422 (1968)).

Here, Plaintiff alleges that Marlow "was working as security, an agent/employee of Defendant," that Plaintiff was targeted as a suspected shoplifter "by agents/employees of Defendant," that Marlow, after arresting and handcuffing Plaintiff, escorted Plaintiff through the store to the Loss Prevention Office, and that after being released Plaintiff was told by another agent of Defendant to not "show his face again at the store." Doc. 20 at ¶¶ 11, 13, 15, 16, 18. Plaintiff also alleges that at all relevant times, "Marlow was

acting under [sic] as an agent/employee of Defendants Walmart Inc and Walmart 1034." Id. at ¶ 21.[2]

Plaintiff's factual allegations regarding the relationship between Marlow and Defendant could be more comprehensive. Nonetheless, when the allegations are taken in the light most favorable to Plaintiff, the undersigned is persuaded that they are sufficient to overcome the Motion to Dismiss.

### 2. Defamation *Per Se*

Defendant argues that Plaintiff's claim for defamation *per se* is barred by the one-year statute of limitations. Doc. 25 at 5.

In his response, Plaintiff states that he "takes a dismissal of Defamation Per Se with prejudice at this time." See Doc. 28 at 6.

To the extent that Plaintiff's statement is intended to be a motion requesting that the court dismiss this claim by Order under Rule 41(a)(2), such a motion should have been filed separately. See LCvR 7.1(c)(2) (directing that motions are not to be included in responsive briefs). Similarly, Plaintiff has not attempted to dismiss this claim unilaterally through the filing of a notice under Rule 41(a)(1). See Fed. R. Civ. P. 41(a)(1).

---

[2] While Plaintiff's original Complaint referred to Marlow as "a Shelby Police Officer," Doc. 1 at 7, and as a "former Shelby Police Officer/Walmart employee," Doc. 1 at 17, the Amended Complaint refers to him only as "Officer Marlow." Doc. 20 at ¶ 11.

In any event, dismissal of this claim is appropriate. See Thomas v. Parker, 3:16-CV-00482-GCM, 2016 WL 9114003, at *2 (W.D.N.C. July 28, 2016) ("In North Carolina, the statute of limitations for slander per se and libel per se is one year") (citing Iadanza v. Harper, 611 S.E.2d 217, 222 (N.C. Ct. App. 2005)).

### 3. 42 U.S.C. §§ 1981 and 1982

Defendant argues that Plaintiff's claims under § 1981 and § 1982 should be dismissed for failure to state a claim. Doc. 25 at 4–5.

Plaintiff responds that he "takes a Dismissal" of these claims. Unlike the "dismissal" of his defamation claim, however, Plaintiff states that his "dismissal" of the §1981 and §1982 claims is "*without prejudice* at this time." See Doc. 28 at 6 (emphasis added).

As with his defamation claim, Plaintiff has not attempted to dismiss his §1981 and §1982 claims either voluntarily or with court assistance by way of a separate filing.

Under these circumstances, the undersigned has considered whether to recommend that Plaintiff be deemed to have conceded the Motion to Dismiss as to these claims and that they be dismissed with prejudice.

However, given that Defendant in its reply did not object to a dismissal of these claims without prejudice, and bearing in mind the policy that, when

9

Case 1:21-cv-00318-MR-WCM   Document 31   Filed 08/05/22   Page 9 of 18

possible, cases should be decided on their merits, the undersigned will recommend that these claims be dismissed without prejudice.

### 4. Intentional Infliction of Emotional Distress

"The elements of a claim of intentional infliction of emotional distress are: '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress.'" Brown v. Whole Foods Market Group, Inc., 3:20-cv-00401-MOC-DCK, 2022 WL 895166, at *5 (W.D.N.C. Mar. 25,2022) (quoting Holleman v. Aiken, 193 N.C. App. 484 (2008)).

Defendant briefly contends that Plaintiff has failed to allege facts to support the first and second elements. Doc. 25 at 6.

"Conduct is 'extreme and outrageous' where it [is] 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Brown, 2022 WL 895166, at *5 (citing Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 354 (2004)). "The threshold determination of whether the alleged conduct may be considered extreme and outrageous is a question of law for the trial judge." Hensley v. Suttles, 167 F.Supp.3d 753, 767 (W.D.N.C. 2016). "The second element may…be proven by a showing that the defendant acted with 'reckless indifference to the likelihood' that his or her acts 'will cause severe emotional distress.'" Miller v. Brooks, 123 N.C. App. 20, 29 (1996).

In Rogers v. T.J.X. Companies, Inc., 101 N.C. App. 99 (1990), the evidence indicated that the plaintiff, after exiting a department store where she had shopped for approximately 20 to 25 minutes, was approached by a store security guard who told her he would like to speak with her about some merchandise and asked her to return to the store with him. She agreed and the security guard followed closely behind her as he escorted her through the store to the security guard's office, where she met with the security guard and another store employee. The security guard then repeatedly demanded the store's merchandise but refused to tell the plaintiff what item he was looking for, resisted all attempts by the plaintiff to prove her innocence, insulted the plaintiff, and threatened to "handcuff her to a chair" and have her arrested. After approximately 30 minutes, the plaintiff was released. As a result of the incident, the plaintiff became sick, nervous, upset, and experienced trouble sleeping. The trial court granted summary judgment in favor of the store owner and the security guard. On appeal, however, the North Carolina Court of Appeals concluded that genuine issues of material fact had been raised and reversed the ruling of the trial court, noting West v. King's Dept. Store, Inc., 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988), in which the state Supreme Court found that a store employee's "unrelenting attack, in the face of

explanation, was both extreme and reckless under the circumstances." Rogers v. T.J.X. Companies, Inc., 101 N.C. App. 99, 106–07 (1990).[3]

Here, Plaintiff has alleged that, though Plaintiff had created no disturbance or disruption, Marlow physically engaged Plaintiff, including slamming his body against metal shopping carts and onto a concrete floor while other customers were entering and exiting the store, arrested Plaintiff, and placed him in handcuffs. Plaintiff further alleges that, even though he informed Marlow that he did not have any property that belonged to Defendant, Marlow proceeded to escort him through the store to the Loss Prevention Office where his luggage was searched and none of Defendant's property was located.

Plaintiff also alleges that he suffered various physical and emotional injuries because of this incident.

---

[3] In a separate section of its opinion, the Rogers court affirmed the trial court's entry of summary judgment in favor of the defendants on a claim by the plaintiff for punitive damages. That ruling was subsequently appealed and the North Carolina Supreme Court reversed, finding that the plaintiff's claim for punitive damages should have survived summary judgment. The Supreme Court did not disturb the Court of Appeals' ruling relative to the intentional infliction of emotional distress claim. Rogers v. T.J.X. Companies, Inc., 101 N.C. App. 99, (1990), rev'd in part, 329 N.C. 226 (1991).

The undersigned concludes that Plaintiff's allegations are sufficient at this stage and that his claim for intentional infliction of emotional distress should not be dismissed.

### 5. Punitive Damages

Defendant argues that Plaintiff's claim for punitive damages should be dismissed because Plaintiff has failed to allege any direct action on the part of Defendant. Doc. 25 at 6–7.

Plaintiff responds that Defendant condoned the actions of Marlow. Doc. 28 at 3–4.

Under North Carolina law, punitive damages may be awarded only when the defendant is liable for compensatory damages and one of three enumerated aggravating factors – fraud, malice, or willful or wanton conduct – was present and was related to the injury for which compensatory damages were awarded. N.C. Gen. Stat. § 1D–15(a).

Further, punitive damages may "not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another." N.C. Gen. Stat. § 1D–15(c). "Instead, a punitive damage claim requires *direct* action by the alleged wrongdoer." Estrada v. Consolidated Utility Services, Inc., 5:10-cv-161-RLV, 2011 WL 2174467, at *2 (W.D.N.C. June 2, 2011). When the defendant is a corporation, the "direct action" requirement is met and thus punitive damages may be awarded only if "the officers, directors, or managers

13

of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D–15(c); see also Estrada, 2011 WL 2174467, at *2 ("To survive a motion to dismiss, Plaintiff must plead sufficient facts to support a plausible claim that at least one of the officers, directors, or managers of the Defendant corporations acted with or condoned 'willful and wanton' conduct with regards to this incident").

Here, other than his allegations concerning Marlow and the allegation that another of Defendant's agents, after Plaintiff was released, told Plaintiff not to visit the store again, Plaintiff has provided no information about the identities or conduct of any other agents or employees of Defendant, including whether they were acting in a managerial capacity or were aware of Marlow's interactions with Plaintiff. Plaintiff's allegations are therefore insufficient to establish, plausibly, that any of Defendant's officers, directors, or managers acted with or condoned the actions of Marlow or the other "agent" who interacted with Defendant.[4]

The undersigned will therefore recommend dismissal of Plaintiff's claim for punitive damages.

---

[4] The Complaint also alleges "Walmart has deliberately chosen not to apologize" to Plaintiff "for its act of racial profiling and falsely accusing Plaintiff[] of theft." Id. at ¶ 22. However, Plaintiff does not include any argument about this allegation in his briefing.

14

### B. Service of Process Issues

Defendant also contends that Plaintiff's claims should be dismissed because Defendant was not properly served. Doc. 25 at 7-10.

As noted above, Plaintiff filed his original complaint on October 25, 2021, at which time he also submitted a motion to proceed *in forma pauperis*.

His request was granted on November 16, 2021. The record indicates that a summons was issued to Defendant the same day, which summons was addressed to Walmart, Inc., 702 S.W. 8th Street, Bentonville, Arkansas 72716. Doc. 8 at 3.

Plaintiff filed his Amended Complaint on January 27, 2022. Doc. 20.

A summons was reissued to Defendant at a different address on February 10, 2022. Doc. 26.

In its principal brief, Defendant argues that the original summons was not served correctly because it was sent via certified mail to Walmart, Inc., as shown on the original summons, and not to an officer, director, or agent of Defendant or to an agent authorized to accept service of process. Doc. 25 at 9–10.

In response, Plaintiff argues that the "time to serve Defendant was tolled until the district court screened his *in forma pauperis* complaint and authorized service of process." Doc. 28 at 5. Plaintiff further argues that he had 120 days after the summons was issued to effect service and that Defendant's

registered agent accepted service of the Amended Complaint on February 11, 2022. Id.

Defendant replies that under Rule 4 of the Federal Rules of Civil Procedure Plaintiff had 90 days (not 120) after the issuance of the original summons to complete service. Further, Defendant "does not dispute that a summons was first issued in this matter on November 16, 2021" and that, therefore, Plaintiff "had until February 14, 2022 to serve" Defendant. Doc. 29 at 4–5. In addition, Defendant acknowledges that "the Amended Complaint and the new summons were served on Defendant's registered agent on February 11, 2022" and that the "original Complaint without a summons was served on the Defendant's registered agent on February 14, 2022." Doc. 29 at 5.

In short, Defendant concedes that the window for Plaintiff to effect service opened on November 16, 2021, and that the Amended Complaint, original Complaint, and re-issued summons were served before that window closed. Rather, Defendant argues that service was deficient because Defendant was never properly served with the original summons.

The undersigned does not find this argument to be persuasive. Defendant does not cite any controlling authorities holding that service of an original summons, after an amended or corrected summons has been issued, is required for service to be complete. Further, as noted, Defendant acknowledges

that it was timely and properly served with the Amended Complaint, the reissued summons, and with the original Complaint.

IV. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 24) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. That, in light of Plaintiff's request and without objection by Defendant, Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1982 be **DISMISSED WITHOUT PREJUDICE**;

2. That Plaintiff's claims for defamation *per se* and punitive damages be **DISMISSED**; and

3. That in all other respects the Motion be **DENIED**.

Signed: August 5, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).