# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | | |
|---|---|---|
| JOHNNIE R. SIMMONS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL CASE NO. |
| vs. | ) | 1:21-cv-00318-MR-WCM |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| JOHNNIE R. SIMMONS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL CASE NO. |
| vs. | ) | 1:21-cv-00320-MR-WCM |
| | ) | |
| NICHOLAS MARLOW, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before this Court on the Motions for Summary

Judgment filed by Defendant Nicholas Marlow ("Officer Marlow") and

Defendant Walmart, Inc. ("Walmart") (collectively "Defendants"). [Docs. 46, 48].[1]

## I. PROCEDURAL BACKGROUND

On October 25, 2021, Johnnie R. Simmons ("Plaintiff"), proceeding *pro se*, filed two separate civil actions. In his first Complaint, filed in Civil Case No. 1:21-cv-00318-MR-WCM, Plaintiff brought claims against three different Walmart defendants: CEO and President Doug McMillion, Walmart Store No. 1034, and Walmart. [Doc. 1]. In a separate Complaint, filed in Civil Case No. 1:21-cv-00320-MR-WCM, Plaintiff brought claims against the Shelby Police Department, Officer Marlow, and an unidentified officer of the Shelby Police Department, John Doe 1. [No. 1:21-cv-320, Doc. 1]. On January 20, 2022, Plaintiff, represented by counsel, filed an Amended Complaint in his case against the police defendants naming only Officer Marlow. [No. 1:21-cv-320, Doc. 15]. On January 27, 2022, Plaintiff filed an Amended Complaint in his case against the Walmart defendants naming only Walmart. [Doc. 20].

In his Amended Complaint against Walmart, Plaintiff alleged claims for assault, battery, false imprisonment, false arrest, defamation per se,

---

[1] Prior to November 23, 2022, this action proceeded as two cases with Plaintiff's claims against the Walmart defendants docketed under No. 1:21-cv-00318-MR-WCM and Plaintiff's claims against the police defendants docketed under No. 1:21-cv-00320-MR-WCM. On November 23, 2022, the cases were consolidated, and subsequent filings have been docketed under No. 1:21-cv-318. Unless otherwise indicated, citations to specific documents refer to documents docketed to No. 1:21-cv-318.

2

intentional infliction of emotional distress under North Carolina law, and for civil rights violations under 42 U.S.C. §§ 1981-82. [See id.]. In his Amended Complaint against Officer Marlow, Plaintiff alleged claims for battery, false imprisonment, false arrest, intentional infliction of emotional distress under North Carolina law, and for civil rights violations under 42 U.S.C. §§ 1981 and 1983. [No. 1:21-cv-320, Doc. 15].

On February 10, 2022, Walmart filed a Motion to Dismiss Plaintiff's civil rights claims and his claims for defamation per se and intentional infliction of emotional distress, arguing that Plaintiff failed to state cognizable claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 24].[2] Walmart also argued that all of Plaintiff's claims against it should be dismissed under Rule 12(b)(4) for insufficient process, and under Rule 12(b)(5) for insufficient service of process. [Id.]. After this Motion was fully briefed, the Honorable Magistrate Judge W. Carleton Metcalf issued a Memorandum and Recommendation [Doc. 31] on August 5, 2022, recommending Plaintiff's claim for defamation per se be dismissed with prejudice and that his claims for civil rights violations under 14 U.S.C. § 1981-82 be dismissed without prejudice under Rule 12(b)(6). [Id.]. Walmart filed objections to these

---

[2] Officer Marlow did not file any pre-answer motions. He filed his Answer to Plaintiff's Amended Complaint on February 17, 2022. [No. 1:21-cv-320, Doc. 24].

3

recommendations on August 19, 2022 [Doc. 32], and this Court overruled those objections and accepted Judge Metcalf's recommendations on September 7, 2022. [Doc. 35]. After its motion was partially denied, Walmart filed its Answer on September 20, 2022. [Doc. 36].

On October 28, 2022, Plaintiff filed a Motion to Consolidate his case against Walmart with his case against Officer Marlow. [Doc. 39]. Judge Metcalf granted this Motion on November 23, 2022, thereby consolidating cases No. 1:21-cv-00318-MR-WCM and No. 1:21-cv-00320-MR-WCM. [Doc. 41]. Since Judge Metcalf's order, the case has proceeded under No. 1:21-cv-00318-MR-WCM. On August 8, 2023, both Officer Marlow and Walmart moved for summary judgment on all of Plaintiff's claims. [Docs. 46, 48]. On August 22, 2023, Plaintiff filed Responses in Opposition to the Motions for Summary Judgment. [Docs. 58–59]. On August 28, 2023, Officer Marlow filed his Reply. [Doc. 61]. The next day, on August 29, 2023, Walmart filed its Reply. [Doc. 62]. Having now been fully briefed, Defendants' Motions for Summary Judgment are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party who must convince this Court that a triable issue does exist. Id. In considering the facts on a motion for summary judgment, this Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

5

## III.    FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff, the following is a recitation of the relevant facts.  On November 22, 2018, Thanksgiving Day, Plaintiff visited Walmart store 1034 in Shelby, North Carolina, to receive a money wire.  [Doc. 20: Amend. Comp. at 4; Doc. 59: Plaintiff's Resp. at 2].  As it was Thanksgiving Day, Walmart was having its annual pre-Black Friday Sale, and it had hired off-duty officers of the Shelby Police Department to help provide security.  [Doc. 20 at 4; Doc. 59: at 5-6]. When he entered the store, Plaintiff had a suitcase with him, which he pushed around the store for approximately two hours.  [Doc. 59 at 2, 6-7].  A Walmart Loss Prevention Officer began following Plaintiff and notified another off-duty police officer, who was also working as security, that Plaintiff had been walking around the store for several hours without making any purchases.  [Id. at 6].

Suspecting that Plaintiff might be shoplifting, the off-duty officer directed Officer Marlow, who was stationed at one of the store's entrances, to stop Plaintiff if he tried to leave the store.  [Id. at 7].  Plaintiff went through the self-checkout line, before pausing at the front of the store.  [Doc. 57-1: Plaintiff's Dep. at 84-86, 91].  There, Plaintiff opened his suitcase.  At this point, an unidentified woman, who Plaintiff believes worked for Walmart,

6

asked him why he was doing so, warned him to "watch out for the officers[,]" and signaled Officer Marlow to approach Plaintiff.  [Id. at 91-93].

When Officer Marlow approached, Plaintiff immediately recognized him as a police officer, as he was wearing his uniform.  [Id. at 131].  Plaintiff's suitcase was open, and Officer Marlow noticed that it contained new clothing with the tags attached.  [Id. at 106, 109].  When Officer Marlow confronted Plaintiff about the clothing, Plaintiff stated that "there's nothing going on, I'm traveling, sir, and I don't feel like being harassed . . . ."  [Id. at 96].  Officer Marlow then grabbed Plaintiff's arm and attempted to place him in handcuffs.  [Id. at 96, 119].  Though Plaintiff did not resist, Officer Marlow slammed him against a shopping cart and ultimately forced him to the ground, "smashing" his head onto the floor.  [Id. at 97, 108-12, 122-24].  Plaintiff was then handcuffed and escorted, against his will, to Walmart's Loss Prevention Office.  [Id. at 111, 117, 123, 128].  Once in the Loss Prevention Office, Plaintiff's suitcase was searched, and it was determined that the clothes therein were not from Walmart.  [Id. at 127].  As such, Plaintiff's belongings were returned to him, and he was allowed to leave.  [Id. at 127, 130].

## IV. DISCUSSION

Defendants have moved for summary judgment on all of Plaintiff's remaining claims.  Against Officer Marlow, his claims include civil rights

7

violations under 42 U.S.C. §§ 1981 and 1983, and state law claims for battery, false imprisonment, false arrest, and intentional infliction of emotional distress. [No. 1:21-cv-320, Doc. 15]. Against Walmart, his claims include assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress. [See Doc. 35].

### A. Claims against Officer Marlow

#### 1. 42 U.S.C. § 1981 – Racial Discrimination

The only remedy for violations of the rights guaranteed by 42 U.S.C. § 1981 is provided by 42 U.S.C. § 1983. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); see also Dennis v. City of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quoting Jett, 491 U.S. at 733) (holding that § 1983 "is the 'exclusive remedy for violation of the rights guaranteed in § 1981.'"). Therefore, Plaintiff's claim for racial discrimination brought under § 1981 fails as a matter of law, as it should have been brought pursuant to § 1983.

Moreover, in support of this claim, Plaintiff's Complaint includes only the conclusory allegation that Officer Marlow "detained Plaintiff, without a factual basis, for an unreasonable amount of time and in an unreasonable manner, because of his race." [No. 1:21-cv-320, Doc. 15 at ¶ 50]. Plaintiff has provided this Court with no forecast of evidence from which a jury could find that Officer Marlow's actions were racially motivated. Indeed, Plaintiff

himself indicated in his deposition that he had no evidence suggesting Officer Marlow was motivated by race, stating, "[t]o say that Marlow had race issues . . . I think it would be pure assumption, and I think that would be wrong on my part. . . . **I don't know what his motivation was.**" [Doc. 57-1: Plaintiff's Dep. at 120-21] (emphasis added). Thus, the Court concludes that Plaintiff has not properly brought a race discrimination claim under § 1983, and to the extent such claim is before the Court, summary judgment is granted in favor of Defendant Marlow.

### 2. 42 U.S.C. § 1983 – Excessive Force

Under 42 U.S.C. § 1983, Plaintiff alleges that Officer Marlow violated his Fourth Amendment right "to be secure in his person from unreasonable seizure through excessive force." [No. 1:21-cv-320, Doc. 15 at 6].

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" while making an arrest. Graham v. Connor, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013). Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 399.

Objective reasonableness is the touchstone; "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397; see also Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) ("Whether an officer has used excessive force is judged by a standard of objective reasonableness.") (citation omitted). "In questioning the split-second decisions of police officers, [this Court] must avoid hindsight bias and try to place [itself] in the heat of the moment." Stanton, 25 F.4th at 233.

Here, the crime of which Plaintiff was suspected, shoplifting, is "relatively minor." See Blevins v. Cabela's Wholesale Inc., No. 1:18-cv-00002, 2018 WL 2187445, at *7 (W.D. Va. May 11, 2018); N.C. Gen. Stat. § 14-72.1 (defining shoplifting as a misdemeanor). Viewing the forecast of evidence in the light most favorable to Plaintiff, when Officer Marlow confronted him to investigate the situation, Plaintiff quickly told him that "there's nothing going on, I'm traveling, sir, and I don't feel like being harassed . . . ." [Doc. 57-1: Plaintiff's Dep. at 96]. Officer Marlow then grabbed Plaintiff's arm, attempted to place him in handcuffs, slammed him into a shopping cart, threw him to the ground, and "smashed" his head into

the floor—despite Plaintiff never resisting.[3] [Id. at 96, 119]. Additionally, Plaintiff posed no threat to the safety of the officers or patrons in the store, and he made no effort to evade or resist arrest. As such, a jury could reasonably conclude that Officer Marlow's use of force was not objectively reasonable.

Officer Marlow contends that security footage [Doc. 51-1] capturing the altercation between himself and Plaintiff "dispels any dispute as to the course of [their] encounter...." [Doc. 61 at 4]. While the footage clearly demonstrates that the encounter lasted longer than Plaintiff recounted, the video does not conclusively contradict Plaintiff's forecast that he did not resist Officer Marlow's efforts to detain him, or that Officer Marlow employed the force Plaintiff claims. Further, as there is no audio, the footage does not capture what was said between Plaintiff and Officer Marlow. Therefore, there remains a genuine issue for the jury on this claim.

Officer Marlow argues, however, that he is shielded from Plaintiff's § 1983 excessive force claim by qualified immunity. [Doc. 51 at 20]. Since there is a genuine issue of fact as to whether Officer Marlow violated

---

[3] Officer Marlow's reliance on Karadi v. Jenkins, 7 F. App'x 185 (4th Cir. 2001), is unavailing. In Karadi, the parties agreed that the officer involved initially did not use force in attempting to detain Karadi, a suspected shoplifter, and only grabbed her arm after she resisted detention. Id. at 194-95. Here, Plaintiff maintains that he at no time resisted Officer Marlow. Further, there is no indication that Karadi was ever thrown to the ground, or that her head was smashed into the floor.

Plaintiff's Fourth Amendment rights, this argument must fail.  See Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015).  The forecast of evidence does not conclusively show that Officer Marlow's use of force in detaining Plaintiff was objectively reasonable; thus Officer Marlow's Motion for Summary Judgment based on qualified immunity must fail.

For all these reasons, Officer Marlow's Motion for Summary Judgment on Plaintiff's § 1983 claim must be denied.

### 3.    Battery

A civil action for battery is available under North Carolina law against one who uses force to accomplish a legitimate purpose (such as an investigatory detention) only if the force used is excessive under the circumstances.  Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988).  "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'"  Jordan v. Civil Serv. Bd., 153 N.C. App. 691, 698, 570 S.E.2d 912, 918 (N.C. Ct. App. 2002) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).  Here, as noted above with respect to Plaintiff's § 1983 claim, this Court cannot conclude as a matter of law that Officer Marlow's use of force was objectively reasonable.  Therefore, Officer Marlow's Motion for Summary Judgment on Plaintiff's claim for battery is denied.

Officer Marlow argues that he is shielded from Plaintiff's battery claim by North Carolina's public official immunity. [Doc. 51 at 23]. However, this argument fails because there is a genuine issue of fact as to whether Officer Marlow used excessive force in detaining Plaintiff, and thus "act[ing] outside and beyond the scope of his duties." See Bartley, 272 N.C. App. at 231, 846 S.E.2d at 756 ("[D]efendant police officers [are] not entitled to summary judgment on the issue of public official immunity where the plaintiff present[s] evidence they used unnecessary and excessive force during an arrest."). Thus, Officer Marlow's Motion for Summary Judgment based on public official immunity is denied.

### 4. False Arrest and False Imprisonment

Claims for false arrest and imprisonment under 42 U.S.C. § 1983 are properly analyzed under the Fourth Amendment. See Myrick, 91 N.C. App. at 212, 371 S.E.2d at 494 (citing Monroe v. Pape, 365 U.S. 167 (1961)). An arrest violates the Fourth Amendment when it is made without probable cause. Id. Likewise, the arrest of a person without probable cause will give rise to a claim for false imprisonment under North Carolina law.[4] Id. (citing

---

[4] Claims for false arrest and false imprisonment may be brought under 42 U.S.C. § 1983 and under North Carolina law. Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 595-96, 599 S.E.2d 422, 430 (2004) (citing Myrick, 91 N.C. App. at 212, 371 S.E.2d at 494). Here, however, Plaintiff fails to note in his Complaint whether he is alleging claims for false arrest and false imprisonment under federal law, North Carolina law, or both. In his Memorandum of Law in Opposition to Defendant Nicholas Marlow's

Mobley v. Broome, 248 N.C. 54, 56, 102 S.E.2d 407, 409 (1958)). The present case, however, does not involve an arrest, but rather an investigatory detention, and both Plaintiff and Officer Marlow correctly recognize that Officer Marlow needed only "reasonable suspicion" to detain Plaintiff. [Doc. 51 at 8; Doc. 58 at 11].

Under both federal and state law, a police officer may conduct an investigatory detention when there is reasonable suspicion at the inception of the detention to believe a crime has been committed. See Terry v. Ohio, 392 U.S. 1, 20 (1968); Walker v. Donahoe, 3 F.4th 676, 682 (4th Cir. 2021); see also State v. Garcia, 197 N.C. App. 522, 528, 677 S.E.2d 555, 559 (2009) (citing State v. Campbell, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005)). "In assessing reasonable suspicion, we view the totality of the circumstances to determine whether the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." Walker, 3 F.4th at 682 (citations and internal quotation marks omitted). Additionally, "an investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983).

---

Motion for Summary Judgment [Doc. 58], it appears in different places that he is asserting these claims under both federal and North Carolina law. As such, Plaintiff's Amended Complaint is construed to allege claims for false arrest and imprisonment under both 42 U.S.C. § 1983 and North Carolina law.

Here, the facts relevant to Plaintiff's false arrest and imprisonment claims are not in dispute. As discussed more thoroughly above, Officer Marlow had received a tip from a fellow officer that Plaintiff may be shoplifting and saw that Plaintiff's suitcase contained clothing with tags attached as he approached Plaintiff. These facts provided Officer Marlow with a basis for reasonable suspicion to detain Plaintiff to investigate him for shoplifting. Further, the undisputed forecast of evidence demonstrates that the detention of Plaintiff was limited in duration, with the entire confrontation on the store's floor lasting approximately five minutes, and the investigation in the Loss Prevention Office lasting around another five minutes. [Doc. 51-1]. Therefore, no reasonable jury could conclude that Plaintiff's detention was longer than necessary to effectuate the purpose of his detention. Royer, 460 U.S. at 500.

Additionally, video footage from the Loss Prevention Office shows that the officers there worked diligently to determine whether the clothing in Plaintiff's suitcase had been stolen and that Plaintiff was released with his belongings as soon as the officers determined that he had not shoplifted. [Doc. 51-1]. In fact, Plaintiff himself notes that he was released from Walmart's Loss Prevention Office "[o]nce it was discovered that [he] did not commit shoplifting[.]" [Doc. 58 at 19]. Additionally, Plaintiff does not argue

that the officers searched anything other than the suitcase that was thought to contain the shoplifted clothing. The Plaintiff does not dispute that Officer Marlow's detention of Plaintiff was reasonable in scope. [Doc. 58]. As such, Plaintiff's claims for false arrest and false imprisonment fail as a matter of law. See Terry, 392 U.S. at 20; Walker, 3 F.4th at 682; see also Garcia, 197 N.C. App. at 528, 677 S.E.2d at 559 (citing Campbell, 359 N.C. at 662, 617 S.E.2d at 13).

### 5.  Intentional Infliction of Emotional Distress

The essential elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant, (2) which is intended to and does in fact cause (3) severe emotional distress. Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behav. Health Sys., 164 N.C. App. 349, 354, 595 S.E.2d 778, 783 (2004) (internal citation and quotation marks omitted). The threshold determination of whether the alleged conduct may be considered extreme and outrageous is a question of law. Id.

Plaintiff's forecast of evidence in this case tends to show that Officer Marlow used excessive force in detaining him during an investigatory stop. However, this forecast alone is insufficient as a matter of law to satisfy the "extreme and outrageous conduct" element of a North Carolina intentional infliction of emotional distress claim. Specifically, Plaintiff has provided no forecast of evidence that Officer Marlow detained him in a particularly traumatizing manner with the intent to inflict severe emotional distress, or that Officer Marlow's conduct in carrying out the investigatory detention "exceed[ed] all bounds usually tolerated by decent society." See Franklin v. Yancey Cnty., No. 1:09-cv-199, 2010 WL 317804, at *7 (W.D.N.C. Jan. 19, 2010). Further, Plaintiff has failed to present any forecast of evidence that he suffered from severe or debilitating emotional distress as a result of Officer Marlow's actions. Therefore, Officer Marlow's Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim is granted.

**B. Claims against Walmart**

Plaintiff's remaining claims against Walmart all rest on the theory that it is vicariously liable for the torts allegedly committed by Officer Marlow. As such, these claims will be discussed together.

17

Employers can be held liable for the torts of their employees, or agents, based on *respondeat superior.* See Matthews v. Food Lion, LLC, 205 N.C. App. 279, 281, 695 S.E.2d 828, 830 (2010). A principal can be liable for the torts of an agent "[w]henever the principal retains the right to control and direct the manner in which the details of the work are to be executed by his agent ...." Gammons v. Dept. of Hum. Res., 344 N.C. 51, 56, 472 S.E.2d 722, 725 (1996). However, the "issues stemming from the private employment of off-duty officers do not fit precisely within the typical framework of respondeat superior," as such framework fails to account for the ability of "an off-duty officer to act within the scope of his or her public employment, even while otherwise performing duties for [his] private employer." White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 718 (Tenn. 2000); see also Ortega v. Brock, 501 F. Supp. 2d 1337, 1339 (M.D. Ala. 2007); Ogg v. Dillard's, Inc., 239 S.W.3d 409, 418-20 (Tex. Ct. App. 2007); Otani v. City & Cnty. of Haw., 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998).

"[A] municipal law enforcement officer acting within his territorial jurisdiction is considered a peace officer who possesses 'all of the powers invested in law enforcement officers by statute or common law.'" State v. Gaines, 332 N.C. 461, 472, 421 S.E.2d 569, 574 (1992) (quoting N.C. Gen. Stat. § 160A-285 (1987)). Further, "[a] police officer retains his official law

18

enforcement officer status even while 'off duty' unless it is clear from the nature of his activities that he is acting solely on behalf of a private entity ...." Id. at 472, 421 S.E.2d at 575. While off duty, an officer "is still an officer and a policeman having the authority, if not indeed the duty to exercise [the] functions pertaining to his office." Id. at 472, 421 S.E.2d at 574; see also State v. Lighter, 108 N.C. App. 349, 350-52, 423 S.E.2d 827, 828-29 (N.C. Ct. App. 1992) (affirming convictions for assault on police officers where off-duty police officers were assaulted while working as private security guards because sufficient evidence established that the officers were engaged in official law enforcement duties when confronting, and ultimately arresting, an individual for disorderly conduct). Thus, where an off-duty officer is employed as security by a private employer, and that officer is engaged in the performance of a public duty, such as the enforcement of the general laws, his employer incurs no vicarious liability for his acts. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 731 (4th Cir. 1999) (citing Glenmar Cinestar, Inc. v. Farrell, 292 S.E.2d 366, 369-70 (Va. 1982).

Here it is undisputed that Officer Marlow was hired as an off-duty police officer to provide security during the store's Black Friday Sale. [Doc. 52: Walmart's Memo. in Supp. at 8-9; Doc. 59: Plaintiff's Resp. at 6]. There is no dispute that Officer Marlow was in full uniform while working at the store

and that Plaintiff immediately recognized Officer Marlow as a police officer when he was approached. [Doc. 57-1: Plaintiff's Dep. at 131]. Officer Marlow approached Plaintiff with the reasonable suspicion that he may have committed shoplifting, a misdemeanor under North Carolina law. [Doc. 48-7: Dec. of Officer Marlow at 1-3; Doc. 59 at 6-8]; see also N.C. Gen. Stat. § 14-72.1. There is no dispute that Officer Marlow based this suspicion on a tip that originated from one of Walmart's Loss Prevention Officers and on the fact that Plaintiff had rolled a suitcase, which Officer Marlow could see contained clothing with the tags still attached, through the store for a few hours. [Doc. 51: Officer Marlow's Memo. in Supp. at 3-4; Doc. 58: Plaintiff's Resp. at 3, 6-8]. The parties also agree that Officer Marlow handcuffed Plaintiff, detained him in the store's Loss Prevention Office, and considered arresting him. [Doc. 48-7 at 3; Doc. 52-1: Excerpt of Plaintiff's Dep. at 36].

As Officer Marlow was acting on such reasonable suspicion that Plaintiff was shoplifting, he was acting pursuant to his official duties—not as a private employee of Walmart—in investigating that crime and in ultimately considering whether to arrest Plaintiff.[5]  See City of Alexandria, 691 S.E.2d

---

[5] Further underscoring this point, Walmart's policies clearly provide that employees are not authorized to engage in the sort of actions taken by Officer Marlow. Specifically, these policies provide that Walmart employees should "[n]ever restrain a suspect or any other customer" and should "[n]ever pat down, frisk, or search a [s]uspect or a [s]uspect's belongings (e.g., purses, bags)." [Doc. 58-2 at 1]. Additionally, the policies outline what employees may and may not do in attempting to detain a suspected shoplifter and

at 773 (holding that an off-duty officer employed by a restaurant as a security guard was acting pursuant to his official duties when he attempted to prevent restaurant patrons from leaving without paying their bill, as "[the officer] believed a misdemeanor had been committed in his presence"); see also Nazif v. IPC Int'l Corp., No. 2:08cv610, 2009 WL 10731082, at *10 (E.D. Va. Mar. 3, 2009) (finding that decisions regarding whether or not to arrest an individual for disorderly conduct implicated a sheriff deputy's official capacity and could not be the basis for vicarious liability as to the deputy's private employer). Therefore, Walmart cannot be held vicariously liable for Officer Marlow's actions. See Richards v. Dillard Dep't Stores, No. 5:95-cv-579-BO(2), 1996 LEXIS 16449, at *8 (E.D.N.C. Oct. 18, 1996) (finding that private employers do "not have the power to dictate the manner in which [off-duty police officers] perform[ ] their official duties as police officers[,]" even where off-duty officers are employed as private security guards, and concluding that private employers, therefore, cannot be held vicariously liable for actions taken pursuant to officers' official duties).

---

specifically provide that "[n]**o contact beyond an open hand on the arm, shoulder or middle of the back of the** [s]**uspect is authorized**" for the purpose of detaining a suspected shoplifter. [Id. at 3] (emphasis in original). The policies further provide that "[i]f the [s]uspect fails to comply" with the attempted detention, "associates must withdraw from the situation and notify local law enforcement." [Id.]. Thus, even if Marlow could be considered an "employee" of Walmart, his actions clearly demonstrate that he was acting in his capacity as a law enforcement officer and well beyond the course and scope of any such employment.

As each of Plaintiff's remaining claims against Walmart rest on a theory of vicarious liability, Walmart's Motion for Summary Judgment is granted and Plaintiff's claims against Walmart for assault, battery, false imprisonment, false arrest, and intentional infliction of emotional distress are dismissed with prejudice.

## V.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that Walmart's Motion for Summary Judgment [Doc. 48] is **GRANTED,** and all of Plaintiff's claims against Walmart are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Officer Marlow's Motion for Summary Judgment [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Motion is **GRANTED** with respect to Plaintiff's claim for civil rights violations under 42 U.S.C. § 1981, and with respect to his state law claims for false imprisonment, false arrest, and intentional infliction of emotional distress, and these claims are hereby **DISMISSED WITH PREJUDICE.**  Officer's Marlow's Motion is **DENIED** with respect to Plaintiff's claims for excessive force under 42 U.S.C. § 1983 and for assault and battery under North Carolina law.

**IT IS SO ORDERED.**

Signed: December 6, 2023

Martin Reidinger
Chief United States District Judge